Maryann **COTTRELL** and Richard G. Holland, Plaintiffs,

v.

**ROWAN UNIVERSITY,**
et al., Defendants.

Civil No. 08–1171 (NLH)(JS).

United States District Court, D. New Jersey.

April 5, 2011.

---

**141.** *Belfi,* 191 F.3d at 139 (citing *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 526 (2d Cir.1992)).

Maryann Cottrell, Richard G. Holland, Glassboro, NJ, pro se.

Daniel F. Dryzga, Jr., Melissa Thersa Dutton, Office of NJ Attorney General, R.J. Hughes Justice Complex, Trenton, NJ, for defendants.

## OPINION

HILLMAN, District Judge.

This matter involves plaintiffs' claims that defendants violated the Americans with Disabilities Act, New Jersey's Law Against Discrimination, the New Jersey Civil Rights Act, and their First Amendment, Due Process, and Equal Protection constitutional rights when they banned plaintiffs from entering the Rowan University campus, and terminated plaintiff Richard Holland's employment. Defendants have moved for summary judgment on all of plaintiffs' claims. For the reasons expressed below defendants' motion will be granted.

## BACKGROUND

Plaintiff Maryann Cottrell is the mother of a severely disabled daughter, and she and plaintiff Richard Holland share the responsibility of her care. Plaintiffs are advocates for the disabled, and they inform local authorities about businesses that fail to maintain handicap accessible parking and fail to discourage unauthorized use of handicapped parking spaces. Plaintiffs have filed numerous cases throughout this District against businesses for their ADA-violative conduct. This case concerns plaintiffs' enforcement activities on the campus of Rowan University in Glassboro, New Jersey. Intertwined with their claims regarding their handicapped parking violation monitoring efforts are claims regarding Holland's termination from employment with Rowan as a groundskeeper.

Beginning in September 2005, plaintiffs focused their attention on handicapped parking violations on Rowan's campus. Over the course of the fall semester, plaintiffs observed what they perceived to be handicapped space parking violations. They would approach the alleged perpetrators, take photos or video of them and their vehicles, and file citizens complaints against them for prosecution in municipal court. Several of these alleged perpetrators reported to Rowan University officials that they had been harassed, frightened, and threatened by the plaintiffs and their conduct. Rowan University security personnel also reported that plaintiffs were uncooperative, rude, and confrontational with them while they tried to address plaintiffs' interactions with the alleged parking violators.

Although plaintiffs dispute that their enforcement activities caused any consternation to Rowan students, staff, visitors or administration, by January 30, 2006, their conduct over the course of several months resulted in Rowan University issuing them

a trespass letter banning them from campus. (Def. Ex. C.) The letter informed them that they could appeal that decision in writing within fifteen days.

Cottrell filed a letter of appeal; Holland did not. Cottrell was notified on March 15, 2006 that a hearing on her appeal would be held on March 30, 2006. The letter, issued by defendant Edward Schoen, the Dean of the College of Business who would be serving as the hearing officer, informed her that she would be able to present evidence, including witnesses, at the hearing concerning the ten specific incidents listed in the January 30, 2006 trespass notice. Schoen told Cottrell that if she did not participate in the hearing it would still proceed in her absence. (Def. Ex. Y.) Schoen also informed Cottrell of the evidentiary standard he would follow in weighing of the evidence. If she was not satisfied with his decision, Schoen told her that she could file an appeal with defendant Drew Calandrella, Rowan University's Vice President for Student Affairs. If Cottrell did not appeal Schoen's decision, it would become final; if she did not appeal Calandrella's decision, it would become final. Should she wish to appeal Calandrella's decision, Schoen informed Cottrell that she would then need to take the matter to the Appellate Division of the New Jersey Superior Court.

On March 30, 2006, Cottrell appeared at the hearing before Schoen. She refused to participate, however, because her request for a continuance was rejected. Cottrell claims that she had asked for a continuance because she was handed a "discovery packet" minutes prior to the hearing, and did not have time to prepare. She also refused to participate in the hearing because it would not be recorded, it was not "sanctioned" by any court, and Schoen was not a "judge of any magnitude with the State of New Jersey." (Pl. Br. at 10.)

At the hearing, held in Cottrell's absence, testimony was presented by ten witnesses, and eleven incident reports were accepted into the record. On April 10, 2006, Schoen issued a nine-page hearing decision, in which he found that in ten documented incidents, Cottrell acted hostile, harassing, disruptive, and aggressive to Rowan University staff, students, and visitors, including a nine year old child, a diabetic pregnant woman, and a student with spinal meningitis. Schoen found that the trespass notice was correctly issued to Cottrell, and that she was banned from campus until June 1, 2008. If she were to enter the campus without prior authorization from the public safety office during that time, she would be subject to arrest. (Def. Ex. Z.) Holland was banned for the same period for the same reasons. Neither Cottrell nor Holland appealed that decision to Calandrella or the New Jersey Superior Court.[1]

During this time, pending was an appeal by Holland of his 1997 termination from employment with Rowan University. In 1997, Holland had been hired as a groundskeeper, but was terminated two months later due to a conviction for possession of fifty grams of marijuana with intent to distribute. Holland appealed both his termination and his criminal conviction. Ultimately, his criminal conviction

1. On March 24, 2006 and December 8, 2006, Cottrell filed Title II, Section 504 Complaints against Rowan with the U.S. Department of Education regarding Rowan's failure to maintain a "transitional plan." The purpose of a Self–Evaluation, Needs Assessment and Transition Plan is to determine if an agency is in compliance with Section 504 of the Rehabilitation Act of 1973 and with the Americans with Disabilities Act. Rowan complied with this requirement on May 1, 2007. (Def. Ex. EE.)

was overturned,[2] and his position at Rowan reinstated. *See In re Holland,* 2007 WL 2570222, *1 (N.J.Super.Ct.App.Div.2007). In March 2008, Holland returned to work at Rowan as a groundskeeper. Because of Holland's return to work, Rowan lifted his trespass ban three months early.

Holland only worked for Rowan for five months. During that time, Holland received unsatisfactory progress reports due to his failure to properly perform his grounds maintenance duties, unauthorized breaks, taking excessive personal calls on his cell phone, taking maintenance department vehicles to areas of campus not relevant to his work, taking pictures during work hours, tape recording conversations without the consent of co-workers and supervisors, making co-workers feel uncomfortable, and excessive absences. On May 9, 2008, sixteen grounds department employees sent the Office of Employee Relations and Office of Equity and Diversity a joint letter complaining that Holland's behaviors and actions were "detrimental and intimidating to the inner-workings of the department." (Def. Ex. QQ.) Twelve separate letters were also separately sent by grounds department employees complaining about Holland. (Def. Exs. II, JJ, KK, LL, OO, PP, RR, SS, TT, UU, VV, and WW.) Additionally, a Rowan secretary, not in the grounds department, complained about Holland's behavior and expressed that she was threatened by Holland's presence. (Def. Ex. ZZ.) On July 12, 2008, Holland was terminated from employment at the end of his working test period due to two unsatisfactory progress reports, which detailed his sub-par performance and other conduct.

Two additional incidents occurred on Rowan's campus that, upon amending their complaint, became part of plaintiffs' current suit. On August 27, 2008, a mother of a student filed a report to campus police stating that Cottrell approached her with a video camera very near to her face, causing her to fear for her safety. The mother was delivering medicine to her son, who was a Rowan student.

On August 30, 2008, during student move-in day, the parking lots adjacent to the residence halls were closed to vehicles, and only students and their families were allowed to drop off their belongings at the curb and then move along. Students with disabilities were given special access. Both plaintiffs entered the parking lot of one residence hall, refused to move their parked vehicle, yelled at various security personnel and confronted the president of the university. Plaintiffs complained about the covered handicapped parking signs and how Rowan security allowed cars to illegally park at the curb and in the handicapped parking area.[3]

As a result of these two incidents, on September 19, 2008, Rowan issued plaintiffs a warning notice. (Def. Ex. AAA.) The notice detailed the two incidents on August 27 and 30, and informed plaintiffs that "if you engage in further disruptive activity on the Rowan University Campus,

---

**2.** His appeals took approximately five years but, ultimately, the Supreme Court overturned the conviction for possession of marijuana. The Court found that the evidence against Holland had to be suppressed as fruit of a prior impermissible warrant-less search. *State v. Holland,* 176 N.J. 344, 363–65, 823 A.2d 38 (2003). The local prosecutor then declined to pursue the matter further and the criminal indictment was dismissed. *See In re*

*Holland,* 2007 WL 2570222, *1 (N.J.Super.Ct.App.Div.2007).

**3.** Relatedly, plaintiffs filed a motion for an injunction regarding the August 2010 student move-in days. In their motion, plaintiffs requested an injunction against Rowan to allow plaintiffs to observe the 2010 student move-in days. The Court denied their request. (See Docket No. 66.)

interfering with the University's operations, a trespass notice will be issued to you, pursuant to N.J.S.A. 2C:18–3." (*Id.*) No trespass notice was issued pursuant to this warning.

On April 10, 2008, plaintiffs filed their complaint, later amended on July 10, 2009, against Rowan University, Timothy Michener,[4] Drew Calandrella,[5] Edward J. Schoen, Rowan University Police Department, and Edward Thompson. Plaintiffs claim that defendants violated their rights under the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA"), New Jersey's Law Against Discrimination, N.J.S.A. 10:5–1 et seq. ("NJLAD"), and New Jersey's Civil Rights Act, N.J.S.A. 10:6–1 et seq., as well as violated their First Amendment, Due Process and Equal Protections right under the U.S. Constitution. Defendants have moved for summary judgment in their favor on all of plaintiffs' claims. Plaintiffs have opposed defendants' motion.

## DISCUSSION

### A. Jurisdiction

Plaintiffs have brought their claims pursuant to 42 U.S.C. § 1983, as well as pursuant to New Jersey state law. This Court has jurisdiction over plaintiffs' federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C. § 1367.

### B. Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed. R.Civ.P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *Id.* In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir.2004) (quoting *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.* Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256–57, 106 S.Ct. 2505. A party opposing summary judgment must do more than just rest upon

---

4. Timothy Michener passed away on April 9, 2009. Plaintiffs have not filed a substitution of party. Therefore, plaintiffs' claims against Michener are dismissed. Fed.R.Civ.P. 25(a).

5. Drew Calandrella was never properly served with plaintiffs' complaint. Thus, Calandrella is not a defendant in this case, and plaintiffs' claims against him are dismissed.

mere allegations, general denials, or vague statements. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir.2001).

## C. Analysis

Plaintiffs' claims can be separated into several categories. Both plaintiffs have asserted claims for discrimination and retaliation under the ADA and NJLAD, and for violations of their constitutional rights and rights under the New Jersey Civil Rights Act. Separately, Holland has asserted claims for employment discrimination and retaliation relating to his termination from his job at Rowan in the grounds department. Each category of claims will be addressed in turn.

### 1. Plaintiffs' discrimination claims under the ADA and NJLAD

■ Judgment must be entered in defendants' favor on plaintiffs' claims that when they were banned from campus in January 2006 they were discriminated against in violation of the ADA and NJLAD because plaintiffs lack standing to bring such claims.[6] The ADA and NJLAD both proscribe discrimination based on a person's disability in places of public accommodation.[7] 42 U.S.C. § 12182; N.J.S.A. 10:5–12(f). An element of a plaintiff's prima facie case for discrimination claims arising under the ADA and NJLAD is that the plaintiff is disabled. In order to succeed on a discrimination claim under the ADA, a plaintiff must prove that he was discriminated against on the basis of his disability. *Access 4 All, Inc. v. ANI Associates, Inc.*, 2007 WL 2793373, *5 (D.N.J.2007); *Lee v. Sherrer*, 2009 WL 901777, *5 (D.N.J.2009); *see also Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 806, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) ("An ADA plaintiff bears the burden of proving that she is a 'qualified individual with a disability.' "). A plaintiff must prove the same thing for a NJLAD claim. *D.B. v. Bloom*, 896 F.Supp. 166, 171 (D.N.J.1995) (explaining that one of the elements of a prima facie case for a discrimination claim based on denied access to a place of public accommodation is that the plaintiff is disabled); *Olson v. General Elec. Astrospace*, 101 F.3d 947, 956 (3d Cir.1996) (noting that it is a plaintiff's burden to prove he is disabled in order to support a NJLAD discrimination claim); *Victor v. State*, 401

---

6. The doctrine of standing is based both on prudential concerns and on constitutional limitations on the jurisdiction of the federal courts. *Bennett v. Spear*, 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). In order to establish an injury in fact, a plaintiff must have suffered an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations omitted). Additionally, there must be a causal connection between the injury and the conduct complained of; that is, the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *Id.* (citations omitted). It must also be "likely," as opposed to merely "speculative," that the injury will be redressed by a

favorable decision. *Id.* at 561, 112 S.Ct. 2130. (citations omitted).

7. The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182.

The NJLAD provides, "For ... any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof, or directly or indirectly ... on account of ... disability." N.J.S.A. 10:5–12(f).

N.J.Super. 596, 952 A.2d 493, 501 (2008) ("New Jersey courts have articulated the elements of a prima facie case of discrimination, identifying the following common factors: (1) plaintiff was handicapped or disabled within the meaning of the statute ....").

■ Plaintiffs are not disabled. Cottrell is the mother of a disabled child, and Holland is Cottrell's companion and fellow caregiver. The disabled child is not a plaintiff in this case. It is only because of plaintiffs' relationship with the disabled child, who plaintiffs state requires constant care and attention, that they are lawfully entitled to park in handicapped parking spaces. As this Court noted in a different case involving these plaintiffs, "plaintiffs have not provided any basis that the ADA and NJLAD requirement that a plaintiff be disabled should be extended to include caregivers of a disabled person. Simply because a person is authorized by law to park in a handicapped space does not mean he is 'disabled' in the context of an ADA or NJLAD discrimination claim." *Cottrell v. J & R Discount Liquor Gallery, Inc.*, 2009 WL 1085729, *4 (D.N.J. April 21, 2009) (NLH). Consequently, because plaintiffs are not disabled, they do not have standing to bring a discrimination claim under the ADA or NJLAD. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (providing that in order to establish an injury in fact, a plaintiff must have suffered an invasion of a legally protected interest).

### 2. Plaintiffs' retaliation claims under the ADA and NJLAD

Plaintiffs allege that when they were banned from campus in January 2006, and then again received a warning notice in September 2008, defendants acted improperly in retaliation for plaintiffs' ADA and NJLAD protected activities. These claims fail.

■ In contrast to a discrimination claim, a claim for retaliation under the ADA and NJLAD does not require a plaintiff to demonstrate that he is disabled. The ADA and NJLAD make it unlawful to retaliate against or intimidate any individual because he or she has opposed any act or practice made unlawful by the ADA or NJLAD.[8] 42 U.S.C. § 12203; N.J.S.A. 10:5–12(d), (e); *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 502 (3d Cir.1997) ("Unlike a plaintiff in an ADA discrimina-

---

**8.** The ADA provides,

(a) Retaliation

No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

(b) Interference, coercion, or intimidation

It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

42 U.S.C. § 12203.

The NJLAD provides,

It shall be unlawful discrimination ...

d. For any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.

e. For any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so.

N.J.S.A. 10:5–12.

tion case, a plaintiff in an ADA retaliation case need not establish that he is a 'qualified individual with a disability.'"). To prove a prima facie case of retaliation under the ADA or the NJLAD, the plaintiff must demonstrate by a preponderance of the evidence that (1) she engaged in a protected activity; (2) she suffered an adverse action; and (3) a causal connection exists between the protected activity and the adverse action. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir.1997); *Cottrell v. Zagami, LLC*, 2010 WL 2652229, *3 n. 8 (D.N.J. June 23, 2010) (JEI) (citing *Abramson v. William Paterson College of N.J.*, 260 F.3d 265, 286 n. 17 (3d Cir.2001)); *Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61, 70 (3d Cir.1996) (explaining that the NJLAD and ADA have been held to be governed by the same standards).

▪ Even if the plaintiffs' handicapped parking activism at Rowan University was considered to be a protected activity under the ADA and NJLAD, they have not shown that they were banned from campus because of that protected activity. *See Cottrell v. J & D Discount Liquor Gallery, Inc.*, 2010 WL 3906786, *10 (Sept. 30, 2010) (NLH) (citations omitted) (explaining that although it is not settled whether a "mixed-motive" analysis or "but for" analysis applies to ADA retaliation claims, plaintiffs still bear the burden of persuasion in showing that their ADA protected activity was a cause of the adverse action).

As detailed above, plaintiffs' January 30, 2006 ban from campus was based on ten documented incidents over the course of three months where plaintiffs acted hostile, harassing, disruptive, and aggressive to Rowan University staff, students, and visitors, including a nine year old child, a diabetic pregnant woman, and a student with spinal meningitis.[9] Similarly, the warning letter plaintiffs received in September 2008 was based on two documented incidents regarding plaintiffs' harassing, disruptive, and threatening behavior.[10] Although plaintiffs' purported reason for coming onto campus was to ensure that the university complied with ADA regulations, it was their harassing and volatile behavior—and not their documentation of parking violations—that was the basis for their ban. Even if plaintiffs had come onto campus to protect disabled persons' parking rights does not mean they can

9. Defendants argue that the two-year statute of limitations applicable to plaintiffs' ADA and NJLAD retaliation claims bars their claims based on the January 30, 2006 ban because plaintiffs did not file their complaint until April 10, 2008. *See Disabled in Action of Pennsylvania v. Southeastern Pennsylvania Transp. Authority*, 539 F.3d 199, 208 (3d Cir. 2008) ("[T]he statute of limitations applicable to claims under Title II of the ADA ... is the statute of limitations for personal injury actions in the state in which the trial court sits."); *Montells v. Haynes*, 133 N.J. 282, 627 A.2d 654, 659 (1993) (explaining that a two-year statute of limitations applies to NJLAD claims); *Disabled in Action*, 539 F.3d at 209 (citations omitted) (explaining that "a federal cause of action accrues when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim"). Defendants are correct for Hol-

land's claims, since he never appealed the January 30, 2006 notice of his ban. Cottrell's claims are not similarly barred because she appealed the January 30, 2006, and her ban did not become final until April 10, 2006 when Schoen issued his decision upholding the ban. Cottrell filed her case here exactly two years thereafter.

10. The Court questions whether a letter warning plaintiffs to cease their disruptive behavior or face another ban and trespass charges constitutes an adverse action, as they were not subject to any restriction on their ability to come onto campus and continue their ADA activism. But even if the letter does qualify as an adverse action, plaintiffs have failed to demonstrate that their protected activity caused them to receive such a warning.

conduct themselves in any manner without consequence. The cloak of the ADA does not extend its protections that far.

Defendants have provided voluminous documentation to demonstrate plaintiffs' conduct, the detrimental effect it had on others, and the reasoning of Rowan officials disallowing plaintiffs from visiting the campus. In their opposition to summary judgment, plaintiffs deny that their conduct harassed, intimidated, threatened or otherwise disturbed campus visitors, students and staff, but they offer no proof to support their point of view. A party opposing summary judgment must do more than just rest upon mere allegations and general denials. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir.2001).

Despite that failure, even if plaintiffs were to be believed, and all of defendants' evidence as to plaintiffs' harassing behavior were rejected, plaintiffs have still failed to provide any proof that their ADA-protected activities were the sole, or even partially motivating, factor in their ban from campus. Consequently, defendants are entitled to summary judgment in their favor on plaintiffs' ADA and NJLAD retaliation claims.

### 3. Plaintiffs' constitutional and civil rights claims

Plaintiffs claim that under the U.S. Constitution and New Jersey Civil Rights Act, they were denied due process, equal protection, and their ability to freely express themselves. All of these claims are without merit.[11]

The Fourteenth Amendment provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

In order to establish a violation of due process, plaintiffs must establish that "(1) [they were] deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty and property, and (2) the procedures available to [them] did not provide him with due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006). Plaintiffs have not shown either.

■ First, plaintiffs have not articulated how they have a constitutionally protected, substantive right to come onto Rowan's campus. *See Albright v. Oliver*, 510 U.S. 266, 272, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (explaining that substantive due process protection has "for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity"); *Adderley v. State of Florida*, 385 U.S. 39, 47, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966) ("The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated.").

■ Even if they did, plaintiffs have not shown how that right was taken from them without proper procedures. Plaintiffs were informed of, and provided, a hearing regarding their ban from campus, the opportunity to further appeal that hearing decision, and the ability to appeal that decision to the New Jersey courts. Cottrell availed herself to the first appeal, but then did not participate in its process. She did not appeal any further. Holland did not file any appeal at all. The numerous opportunities to challenge the validity of Rowan's decision to ban plaintiffs from campus more than satisfies the Fourteenth Amendment's due process requirement.

---

11. Plaintiffs bring their constitutional violation claims pursuant to 42 U.S.C. § 1983. Because both § 1983 claims and N.J. Civil Rights Act claims may only be asserted against a "person," *see Fields v. Essex County Probation Dept.*, 2011 WL 677255, *2 (N.J.Super.Ct.App.Div.2011), these claims fail against Rowan University and its police department.

See Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) ("The core of due process is the right to notice and a meaningful opportunity to be heard."). Simply because plaintiffs disagreed with the procedures or did not avail themselves of them does not amount to a due process violation.

■ Similarly, plaintiffs have not made out an equal protection violation claim. In order to prove a claim under the Equal Protection Clause, plaintiffs must show that absent a rational basis for doing otherwise, they were treated differently from similarly situated persons. Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000); see also Vacco v. Quill, 521 U.S. 793, 799, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997) (explaining that the Equal Protection Clause, which "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,'" does not create any substantive rights, and "[i]nstead, ... embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly." ... "If a legislative classification or distinction neither burdens a fundamental right nor targets a suspect class, we will uphold [it] so long as it bears a rational relation to some legitimate end" (citations omitted)). Plaintiffs have not provided any evidence that non-ADA-activists who have engaged in similar conduct have not been similarly banned from campus. To the contrary, even though it is not defendants' burden of proof, defendants have provided evidence showing that Rowan has issued dozens of trespass notices to other individuals who have disrupted university operations through conduct ranging from lying on a

bench to aggravated assault. Consequently, plaintiffs' equal protection claim fails.

Finally, plaintiffs' First Amendment claim is also unsustainable. To establish a First Amendment retaliation claim, plaintiffs must prove the following elements: (1) they engaged in constitutionally protected conduct; (2) defendants took adverse action sufficient to deter a person of ordinary firmness from exercising his rights; and (3) the adverse action was prompted by plaintiffs' protected conduct. Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir.2003). Even if plaintiffs' actions were protected First Amendment activity, and their ban from campus sufficiently deterred them from continuing those activities, for the same reasons expressed above with regard to plaintiffs' ADA and NJLAD retaliation claims, plaintiffs have not provided any proof to support that their ban from campus was motivated by their protected activities.[12] Accordingly, plaintiffs' First Amendment claim fails as well.

### 4. Plaintiff Holland's employment discrimination and retaliation claims

Holland claims that he was discriminated against during his time as a groundskeeper at Rowan, and fired from that position, because of his ADA activism and association with Cottrell. Defendants are entitled to summary judgment on these claims because there is no evidence in the record that Holland complied with the requirement that Holland exhaust his administrative remedies by filing a charge with the Equal Employment Opportunity Commission (EEOC) prior to filing suit.

Before filing a complaint, a plaintiff alleging discrimination under the ADA, or any discriminatory employment practice,

---

12. Moreover, simply because a place is open to the public, and the public is allowed to roam about unhindered, it is not per se converted into a public forum. United States v.

Grace, 461 U.S. 171, 177, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983); Greer v. Spock, 424 U.S. 828, 837, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976).

must exhaust his administrative remedies by filing a charge with the EEOC. *See* 42 U.S.C. § 2000e–5(e)(1); 42 U.S.C. § 12117(a) (adopting Title VII enforcement scheme and remedies for ADA); *Williams v. East Orange Community Charter School,* 396 Fed.Appx. 895, 897 (3d Cir.2010). An individual must file a charge within the statutory time period, either 180 or 300 days, and serve notice upon the person against whom the charge is made. A claim is time barred if it is not filed within these time limits. *Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Holland has not shown that he has complied with these procedures. Thus, because of Holland's failure to comply with the EEOC administrative process, all employment discrimination and retaliation claims by Holland are barred.[13]

### CONCLUSION

For the reasons expressed above, summary judgment must be granted in defendants' favor on all of plaintiffs' claims. An

13. Even if Holland's claims relating to his employment were not barred, they are substantively without merit. Defendants have provided substantial evidence that Holland was terminated for failure to properly perform his grounds maintenance duties, taking unauthorized breaks, taking excessive personal calls on his cell phone, taking maintenance department vehicles to areas of campus not relevant to his work, taking pictures during work hours, tape recording conversations without the consent of coworkers and supervisors, making co-workers feel uncomfortable, and excessive absences. Defendants have also provided evidence to show that Holland was afforded numerous occasions to correct these deficiencies. Other than Holland's own disagreement with his superiors' and coworkers' view of his work performance, he has not provided any evidence to show that his ADA activism or other protected activities caused his adverse employment actions. *See*

Order consistent with this Opinion will be entered.

*Goosby v. Johnson & Johnson Medical, Inc.,* 228 F.3d 313, 318–19 (3d Cir.2000) (citing *Ezold v. Wolf, Block, Schorr and Solis Cohen,* 983 F.2d 509, 522 (3d Cir.1993)) (explaining that to prove a *prima facie* case of disparate treatment, a plaintiff must offer sufficient evidence that he was: (1) a member of a protected class, (2) qualified for the position, and (3) nonmembers of the protected class were treated more favorably than him); *Muzslay v. City of Ocean City,* 238 Fed.Appx. 785, 789 (3d Cir.2007) (citing *Abramson v. William Paterson College,* 260 F.3d 265, 286 (3d Cir. 2001)) (explaining that to establish a *prima facie* case for a retaliation claim, a plaintiff must show: (1) he engaged in a protected employee activity; (2) the employer took adverse action against him after, or contemporaneous with, his activity; and (3) a causal link exists between his activity and the employer's action against him).